UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| CRAIG & LANDRETH, INC. ) <br> d/b/a CRAIG & LANDRETH MAZDA ) <br> (Dealer Code No. 34514), ) <br> LARRY CRAIG and ) <br> JAMES H. SMITH, JR. ) <br> a/k/a JIMMY SMITH, ) <br> ) <br> Plaintiffs ) <br> ) <br> v. )     4:07-cv-134-SEB-WGH <br> ) <br> MAZDA MOTOR OF AMERICA, INC. ) <br> d/b/a MAZDA NORTH AMERICAN ) <br> OPERATIONS, ) <br> ) <br> Defendant. ) | |

## ENTRY ON PLAINTIFFS' MOTION FOR SANCTIONS

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on plaintiffs' Motion for Sanctions: Expert Witness and Attorneys Fees, filed August 10, 2010. (Docket No. 162).[1] Defendant filed a responsive memorandum on August 27, 2010. (Docket No. 168). Plaintiffs filed a reply brief on September 7, 2010. (Docket No. 169).

The Magistrate Judge, being duly advised, now **GRANTS, in part,** and **DENIES, in part,** the Motion for Sanctions.

This case was brought by plaintiffs Craig & Landreth, Inc., and its officers against defendant, Mazda Motor of America, Inc., d/b/a Mazda North American

---

[1] *See* Order Referring Matter to Magistrate Judge William G. Hussmann entered August 17, 2010. (Docket No. 166).

Operations (hereafter "Mazda"), alleging, among other things, breach of contract and violation of the Indiana Deceptive Franchise Practices Act. Although there are also allegations that another dealership opportunity was promised to plaintiffs but later denied, the crux of this lawsuit is found in paragraphs 9-11 of plaintiffs' Complaint, which state as follows:

> 9. That defendant had a policy or procedure for allocation of new vehicles among its various authorized dealers of "sell one, buy one" whereby dealers were entitled to purchase a new vehicle from defendant for each new Mazda sold by such dealer.
>
> 10. That beginning in or around January 2005 and continuing until November 22, 2006, and in violation of the policy of "sell one, buy one", defendant failed and refused to allow plaintiff Craig & Landreth, Inc. to buy new cars from defendant to replace new Mazda vehicles sold by Craig & Landreth, Inc.
>
> 11. That the acts and conduct of defendant placed Craig & Landreth, Inc. at a competitive disadvantage with other authorized Mazda dealers in the Louisville/Southern Indiana market, as well as throughout the region.

Clearly at issue from the inception of the lawsuit was whether Mazda had a "vehicle allocation policy" established by contractual document or practice, and if so, whether Mazda had breached an enforceable contractual promise or, as a matter of policy, treated plaintiffs unfairly and as prohibited under Indiana's Deceptive Franchise Practices Act.

In late June 2008, plaintiffs filed a Motion to Compel Discovery Responses that included requests that data necessary to verify "vehicle allocation" policies and practices be produced. (Docket No. 33). While there was a response in opposition to that motion, no judicial intervention was requested when plaintiffs agreed to withdraw the motion to compel pending the parties' attempts to resolve the matters

by agreement. The Motion to Withdraw Request to Compel Discovery Responses was filed on July 18, 2008. (Docket Nos. 36-37, and the order granting the request at Docket No. 38).

Approximately 60 days later, on September 26, 2008, a Second Motion to Compel Discovery Responses was filed. (Docket No. 56). A response was filed by defendant on October 17, 2008, and a reply brief was filed on October 21, 2008. (Docket Nos. 64, 68). This second motion to compel addressed disputes between the parties concerning the time period in which data must be produced and the format for the presentation of the data necessary to, among other things, calculate the vehicle allocation formula. On December 3, 2008, the Magistrate Judge ruled that the appropriate time period would be for the years 2004 through 2007, and that defendant should provide the data in ".txt" format. (Docket No. 83). The Magistrate Judge concluded that certain documents previously produced pertaining to vehicle allocation data constituted "summaries" and, pursuant to Rule 1006, the original documents which supported the summaries must be made available for examination or copying by the plaintiffs. The Magistrate Judge limited the documents to those which relate to the particular region in which plaintiffs' dealership was administratively categorized and directed that these items be produced at the defendant's expense, absent a more specific showing of undue burden or expense. The Magistrate Judge concluded that the information sought in the second request for production of documents was relevant to the calculation of vehicle allocation, and the parties were directed to confer concerning the appropriate production dates of

the remaining materials, if those were not contained on the defendant's present computer system.

A Third Motion to Compel Discovery Responses was filed on March 6, 2009, approximately 90 days after the Magistrate Judge's prior order. (Docket No. 94). Plaintiffs filed this third motion to compel because defendant's counsel had advised via correspondence that certain documents responsive to the plaintiffs' request for production of documents had turned out to be "quite voluminous" and that even though the responsive documents were maintained on its active computer database, defendant would be hiring a third-party vendor to travel to defendant's in-house offices and retrieve such documents at a cost ranging anywhere from $37,000 to $68,000, plus travel costs.

Defendant filed a response in opposition to the third motion to compel on March 24, 2009, and plaintiffs filed a reply brief on April 2, 2009. (Docket Nos. 96-97). The Magistrate Judge held a hearing on April 14, 2009, where Ernest H. Manuel, Jr., Ph.D., testified. The Magistrate Judge granted, in part, and denied, in part, the third motion to compel in an order entered April 27, 2009. (Docket No. 100). The Magistrate Judge took under advisement certain interrogatories and requests for production because the parties were continuing to pursue production of documents through May 15, 2009. Among the interrogatories answered by Mazda was Interrogatory No. 12 in which it was asked: "Describe in detail the allocation formula(s) used between January 1, 2000, and December 1, 2004." Because Mazda provided what purported to be their formula in very specific detail, no more specific answer to that interrogatory was required or mandated by the order on the third

motion to compel. At the time of this dispute, the Magistrate Judge was faced with the testimony of plaintiffs' expert indicating that certain portions of the data received were incomplete and that he could not calculate vehicle allocation formulas from the data provided. On the other hand, the representation from Mazda was that all data necessary to the calculation of the formulas had, in fact, been produced, and that all data allowing the tracing of each vehicle sold in the region was available to plaintiffs' expert to review. Based on the representations by the defendant that all data necessary to calculate the allocation formula had been produced in this regard, no further orders to compel additional data issued.

On June 18, 2009, one year after the initial motion to compel, plaintiffs filed their Fourth Motion to Compel Discovery Responses. (Docket No. 113). After response (Docket No. 118) and reply (Docket No. 119), and on July 27, 2009, the Magistrate Judge ordered defendant to produce electronic data in its "native format" because of a dispute between the parties over their abilities to extract and manipulate the data which had been produced (Docket No. 125).

On December 8, 2009, a little more than four months after the Magistrate Judge's July 27, 2009 order, a Fifth Motion to Compel Discovery Responses and Request for Sanctions was filed by plaintiffs. (Docket No. 129). In that motion, plaintiffs complained that defendant had failed to completely respond to the interrogatories and requests for production and provided only "incomplete, piecemeal, confusing, and inadequate responses."

In it's Memorandum in Response to the fifth motion to compel (Docket No. 131), defendant provided two Affidavits of Jennie Mendel. Ms. Mendel's first

Affidavit explained that certain data not in existence had not been intentionally destroyed and "[t]he data that Mazda has produced to date is the data necessary to calculate the allocation methodology." (Memorandum in Response, Exhibit A, Affidavit of Jennie Mendel, ¶ 5). Ms. Mendel's second Affidavit (Memorandum in Response, Exhibit B) described in some detail why Ms. Mendel believed that various pieces of data are necessary to calculate the formula at issue. Mendel's Affidavit stated that all such necessary data had been provided. Mendel did describe why certain changes to the Mazda data had been made in the regular course of business, and that those changes caused certain data fields to be unable to be provided as they existed during the relevant time period between 2004 and 2006. Based upon the Affidavits of Ms. Mendel, the Magistrate Judge concluded that it was likely that all data necessary to compute the vehicle allocation formula had now been produced, and that it was certainly not clear that defendant wilfully violated any court order by failing to produce certain data.

The current Motion for Sanctions arises out of a Rule 30(b)(6) deposition taken of Ryan Kita, defendant's National Sales Planning Manager and Rule 30(b)(6) designee. During Mr. Kita's deposition, he was asked to calculate a vehicle allocation formula. Mr. Kita was unable to calculate two key variables employed in Mazda's allocation methodology. Mr. Kita admitted that certain data necessary to calculate those variables had not been produced, and he, as Mazda's representative, could not calculate the allocation formula without that data. The data necessary to provide the calculations was not produced until after his deposition.

What has become apparent at this stage of the litigation is that plaintiffs taking Mr. Kita as a Rule 30(b)(6) representative should perhaps been done at the very earliest stage of this litigation. To have done so would have allowed both parties to identify with precision what data is necessary to calculate the formula and where that data can be found. In the now three years since the filing of the Complaint, Mazda is unable to produce a corporate representative able to calculate with specificity how Mazda determines the allocation of its vehicles. Nor can Mazda confirm that its purported allocation formula was applied in this case by application of the formula of the underlying data produced. Whether this shortcoming is intentional or inadvertent, Mazda's failure to provide complete data and a full answer to interrogatories establishing how such allocations were computed has caused the filing of at least five motions to compel and has significantly delayed plaintiffs' ability to complete discovery, respond to summary judgment, and be prepared for trial.

The Magistrate Judge concludes that some sanction for the undue delay in producing data is warranted; however, it is the normal process of this court to address the amount of the appropriate sanction at or near the completion of the litigation. In the event the parties are unable to reach agreement to resolve the dispute between them, the Magistrate Judge will complete the referral from the district court judge by conducting a hearing to review the amount of expert witness and attorney fees sought. The Magistrate Judge will then file a report and

recommendation pertaining to the precise amount of monetary sanction which should be imposed in this case.

**SO ORDERED.**

**Dated:** October 29, 2010

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Fred E. Fischer III
FISCHER & KELLY
fischerandkelly@insightbb.com

William Jay Hunter
STOLL KEENON OGDEN PLLC
william.hunter@skofirm.com

Brad S. Keeton
STOLL KEENON OGDEN PLLC
brad.keeton@skofirm.com

Joseph Michael Kelly
FISCHER & KELLY
fischerandkelly@insightbb.com

Crystal Gates Rowe
KIGHTLINGER & GRAY, LLP
crowe@k-glaw.com

Van T. Willis
KIGHTLINGER & GRAY, LLP
vwillis@k-glaw.com